[No. 5657.]

## WILSON v. THE PEOPLE.

**1. Statutes—Amendments—Statutory Construction.**

Where there are two acts on the same subject, the rule is to give effect to both, if possible; but if the two are repugnant in any of their provisions, the later act, without any repealing clause, repeals the first to the extent of the repugnancy; and, if the later act covers the whole subject included in the first and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal thereof.—P. 420.

**2. General Saving Statute—Election Laws—Violations—Criminal Prosecution—Jurisdiction.**

The act of March 17, 1891 (3 Mills' Rev., 4189a), provides that the repeal or revision of any statute or part thereof shall not extinguish any penalty which may have been incurred thereunder, unless the repealing act shall so expressly provide. The act of April 5th, 1905 (Sess. Laws 1905, chap. 100, p. 188), in relation to registration, constitutes a complete and original act designed to create a new and distinct system of registration, and provides that "All acts and parts of acts inconsistent with the provisions of this act, as well as all penalties thereunder, are hereby repealed." Held, that a prosecution for a violation of the provisions of the Election Law of 1894 (Sess. Laws 1894, chap. 8, p. 68), brought before the passage of the act of 1905 relative to the registration of electors, cannot be maintained after the enactment of the statute of 1905.—P. 421.

3. **Constitutional Law—Title of Act—Repealing Prior Law.**

It is not necessary to state in the title of an act the effect of the subject-matter of such act in repealing some prior law, since the repeal of a prior law is necessarily connected with the subject-matter of the new law on the same subject, and a repealing section in the new act is valid notwithstanding the title is silent as to such repeal.—P. 426.

*Error to the District Court of Pueblo County.*

*Hon. J. H. Voorhees, Judge.*

E. H. Wilson was convicted of a violation of the election law, and brings error.

Decision *en banc.*                    *Reversed.*

Mr. JUSTICE STEELE and Mr. JUSTICE GUNTER dissenting.

Mr. LYMAN I. HENRY and Mr. F. R. McALINEY (Mr. JOHN M. WALDRON, special counsel), for plaintiff in error.

Mr. N. C. MILLER, attorney general, Mr. I. B. MELVILLE, assistant attorney general, Mr. S. HARRISON WHITE, Mr. C. S. ESSEX, and Mr. C. D. HAYT, of counsel, for the people.

On January 14, 1905, the plaintiff in error (defendant below) was indicted for the violation of the provisions of the election law of 1894 relating to the registration of qualified electors. On April 5, 1905, an act known as the Booth Registration Law was approved, and went into effect from that date, which covered the entire subject of registration, and which provided, *inter alia,* that "All acts, and parts of acts, inconsistent with the provisions of this act, as well as all penalties thereunder, are hereby repealed." On the 20th of April, 1905, his counsel filed a motion to dismiss the indictment and discharge the defendant upon the ground that the latter act, having repealed the former and all penalties incurred thereunder, there was no law under which the indictment

could be prosecuted or any punishment administered. This motion was overruled. Thereafter, on the 2d day of May, 1905, the cause was tried to a jury. Upon the trial, the defendant, in various ways, presented objections to the jurisdiction of the court to proceed with the trial, which were overruled. A verdict of guilty was returned, and defendant sentenced to imprisonment in the penitentiary for not less than three, nor more than five years. To this sentence this writ of error is prosecuted.

Mr. JUSTICE GODDARD delivered the opinion of the court:

The controlling question, and the only one argued by counsel is, whether a prosecution for a violation of the provisions of the law of 1894 can be maintained notwithstanding the enactment of 1905 above referred to. It is manifest from a comparison of these acts that the latter is not amendatory of the former, but is within itself a complete and original act designed to create a new and distinct and different system of registration independent of, and clearly intended by the legislature to be a substitute for, all prior acts upon the subject. The rule of construction that applies in such cases is well settled, and, as stated by Mr. Justice Field in the case of *United States v. Tynen*, 11 Wall. 88, is this: "When there are two acts on the same subject, the rule is to give effect to both, if possible. But, if the two are repugnant in any of their provisions, the later act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first; and even where two acts are not in express terms repugnant, yet, if the later act covers the whole subject of the first and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act."

To the same effect are the following, among other cases that might be cited:

*Keese v. City,* 10 Colo. 112; *Edwards v. D. & R. G. R. R. Co.,* 13 Colo. 59; *People v. Ames,* 27 Colo. 126; *City of Mt. Vernon v. Evans Brick Co.,* 204 Ill. 32; 28 Am. & Eng. Enc. Law (2d ed.) 731, and cases cited in Note 4.

In *People v. Ames, supra,* this court, in considering the question whether the act of 1899, prescribing the duties of the state board of equalization, repealed section 5 of the act of 1891 which appertained to the same subject, used this language:

"Section 5 of the earlier, and section 2 of the later act, both refer to the same subject. The last covers the whole subject-matter of the first; does not purport to amend it; invests the board with new powers; plainly shows that it was intended as a substitute for the earlier section, and expressly provides that all parts of acts in conflict with it are repealed. For these reasons, we are of opinion that section 2 of the act of 1899 operates as a repeal of section 5 of the act of 1891."

It follows, therefore, that the act of 1894 went out of existence for any and all purposes upon the approval of the act of 1905, unless the right to prosecute for penalties incurred thereunder is preserved by the statute, approved March 17, 1891, section 4189a, 3 Mills' (Rev.) Stats., known as the general saving clause, which provides, *inter alia,* that "The repeal, revision * * * of any statute or part of a statute, or section or part of a section of any statute, shall not have the effect to release, extinguish, alter, modify or change in whole or in part, any penalty * * * either civil or criminal, which shall have been incurred under such statute, unless the repealing, revising * * * act shall so expressly provide, and such statute * * * shall be treated

and held as still remaining in force for the purpose of sustaining any proper action or prosecution * * * for the enforcement of such penalty," etc.

It has been universally held that this law provides a rule of construction applicable to future statutes when not inconsistent with the object, language, or manifest intent of the latter. In other words, if any language be employed in the repealing statute which evidences an intention on the part of the legislature to abolish or extinguish the penalties provided by and incurred under the statute repealed, such intention will prevail, notwithstanding the saving clause statute, because one legislature has no power' to limit or control a succeeding one in the exercise of its constitutional functions. Only when the repealing statute is silent does the general saving statute operate.—*State v. Showers,* 34 Kan. 269; *Davidson v. Witthaus,* 94 N. Y. S. 428; *McCann v. City,* 65 N. Y. S. 308; *Files v. Fuller,* 44 Ark. 273; Endlich on Int. of Stats., § 365; 2 Lewis Sutherland on Stat. Const., § 355; 1 *Ibid.,* § 287; *Pannell et al. v. Louisville, etc., Co.,* 113 Ky. 630.

In *Files v. Fuller, supra,* the court, referring to a general saving statute of that state, said:

"This statute has very little importance, save in hermeneutics, and has been rarely invoked, for no legislature has power to prescribe to the courts rules of interpretation, or to fix for future legislatures any limits of power as to the effect of their actions. Any subsequent legislature might make its repealing action operate in pending suits, as effectually as if no such statute existed, and the courts are quite free yet to consider what the subsequent legislature did in fact intend, or had power to do."

In *McCann v. City, supra,* the effect to be given to a saving clause statute passed by the legislature of New York in 1892, which is substantially the same

as ours, was under consideration. The court, in referring to the statute, remarked:

"This is in the nature of a general saving clause. * * *   It is suggested that the legislature of 1892 had no power to trammel or impair the action of subsequent legislatures; but as was said in the case of *People v. England,* 91 Hun. 155, in considering the effect of this very section of the statutory construction act upon acts passed at sessions of the legislature in subsequent years:

" 'The legislature, by the act of 1892, laid down a rule of statutory construction applicable to all future statutes. The act did not attempt to interfere in any manner with future legislation, but simply prescribed a rule of construction applicable when not inconsistent with the general object of the subsequent statute, or the context of the language construed, or other provision of the repealing law indicating a different intent.' "

In *Davidson v. Witthaus, supra,* in commenting upon the same statute, the court used this language:

"The legislature of 1892 could not fetter the legislature of 1901 (Cooley Const. Lim., 7th Ed., p. 174 *et seq.),* and I think that the statutory construction law is not an attempt at so vain a thing. This statute is a *rule of construction,* applicable when not inconsistent with the *general object of a subsequent statute,* or the context of the language construed, or other provision of a repealing law indicating a different intent."

In *Pannell et al. v. Louisville, etc., Co., supra,* several actions to recover penalties for violations of the provisions of the Kentucky statute regulating the sale of leaf tobacco were consolidated. Pending the consolidated action, this statute was repealed, and in the repealing act it was provided: "That no penalty provided in said act (act repealed) shall hereafter

be recoverable in any court of this commonwealth.''
In the court of appeals the appellee contended that,
notwithstanding this provision, the action might be
continued by virtue of section 465 of the saving stat-
ute, which provided that: ''No new law shall be con-
strued to repeal any former law as to any act or any
penalty incurred or any right accrued under it.''
Judge Hobson, who delivered the opinion, holding
the latter act inoperative, said:

''But what one legislature provides, another may
repeal; and the act of March 29, 1902, not only re-
peals the former statute under which these proceed-
ings were instituted, but, in terms, provides that no
penalty under that act shall hereafter be recovered in
any court of the state. It is settled that, in order to
enter judgment for a penalty, there must be a statute
in force at the time authorizing the court to enter the
judgment, and that if the act is repealed pending the
action the court is without power to give judgment,
and the action must be dismissed.  *  *  *  We are
therefore without authority to proceed further.''

These decisions, and we have found none holding
otherwise, clearly establish the rule that the intention
of the legislature, in whatever form of language it
may be expressed in a subsequent repealing statute,
must prevail notwithstanding the rule of construc-
tion declared by a previous saving act. Counsel for
appellee insist that the words ''as well as all penal-
ties thereunder are hereby repealed'' are not suf-
ficient to indicate an intention of the legislature to
abolish or destroy the right to prosecute for penalties
incurred under the repealed act; and, furthermore, if
held sufficient to indicate such an intention, they are
unconstitutional and void because no reference is
made thereto in the title of the act. It is a well
settled canon of construction that every word in a

.law must be given some meaning, and effect is to be given, if possible, to every clause and section.—*Mc-Lean v. People,* 9 Colo. 193; *Board v. Wilson,* 15 Colo. 90; *Crozer v. People,* 69 N. E. 489; *Brown v. Turner,* 174 Mass. 150; and that the intention of the legislature, if it can be ascertained, governs whenever doubts arise as to the meaning of words employed.— *Carlisle v. Pullman Co.,* 8 Colo. 320.

It is therefore incumbent upon us to ascertain and give effect to the purpose sought to be accomplished by the legislature by the use of the words employed in the repealing section of the act of 1905. If only the repeal of the prior statute was intended, the words "as well as all penalties thereunder" are mere surplusage, and must be treated as a formula signifying nothing. We are not permitted to so treat them. As we have already seen, effect must be given, if possible, to each word and clause of the statute, and we are not at liberty to desregard any of the language unless "it be impossible to attribute a rational purpose to it when considered in connection with the context."—*County Court v. Schwarz,* 13 Colo. 291.

What, then, is the force and significance of the word "repealed" when used in reference to the penalties incurred under the act repealed? The Century dictionary defines the word "repeal": "To revoke, abrogate as a law or statute. It usually implies a recalling of the act by the power that made or enacted it. To give up, dismiss. To call back, recall, revoke, retract." Among the definitions given to the word by Webster is "To revoke, to rescind or abrogate by authority, as by act of the legislature," and as synonyms of the word "repeal" he gives the following: "To abolish, to revoke, rescind, recall, annul, abrogate, cancel." The plain purpose of the word,

therefore, as used by the legislature, was to manifest an intention to abolish and annul the right to prosecute for any and all penalties incurred under the act of 1894. This obvious intention must prevail, whatever may be our opinion as to the propriety or expediency of the purposes effected thereby. With these we have no concern; it rests with us to declare the law as we understand it.

The further objection that if the phrase under consideration is held sufficient to indicate an intention to take the same out from under the provisions of the "General Saving Statute," it is unconstitutional because no reference is made thereto in the title, is, we think, untenable. In considering a similar objection in *Trackman v. The People*, 22 Colo. 83, 85, the following language is used: "It is not necessary, in order to conform to this constitutional requirement, to state in the title the effect of the subject-matter of the act in repealing some prior law, since the repeal of a prior law is necessarily connected with the subject-matter of the new law on the same subject; and a repealing section in the new statute is valid, notwithstanding the title is silent as to such repeal."

Our conclusion is that the Booth act, which took effect and was in force from and after its passage, superseded all prior acts upon the subject of registration, and extinguished the right to prosecute the plaintiff in error for the offenses charged in the indictment. It follows that the trial in the court below was without authority of law. The sentence and judgment of the court is therefore reversed, and the cause remanded with directions to dismiss the action.

*Reversed.*

Decision *en banc.*

Mr. Justice Steele and Mr. Justice Gunter dissent.

Mr. JUSTICE GUNTER, dissenting:

January, 1905, plaintiff in error was indicted under the Election Law of 1894. April 5th, 1905, the Booth Registration Law went into effect. May, 1905, plaintiff in error was tried upon the indictment, convicted and sentenced to the penitentiary. The case is here for review.

The sole contention of plaintiff in error is, that the enactment of the Booth law repealed the law of 1894, and all penalties thereunder, and therefore worked his discharge. The facts pertinent are: The indictment charged plaintiff in error with corruptly and feloniously making false answer, under oath, for the purpose of securing the registration of an unqualified elector. The indictment was drawn under section 17 of the act of 1894, which section reads as follows:

"Except as otherwise provided in this act, any person who shall make false answer, either for himself or another, or who shall violate or attempt to violate any of the provisions of this act, or knowingly permit another to violate the same, or any public officer or officers upon whom any duty is imposed by this act or any of its provisions, who shall wilfully neglect such duty, or who shall wilfully perform it in such a way as to hinder the objects and purposes of this act, shall be deemed guilty of a felony, and on conviction thereof shall be punished by imprisonment in the penitentiary not less than one year nor more than five years, and if he be a public officer shall forfeit his office."

Section 18 of the Booth act reads as follows:

"Any person who shall make false answer, either for himself or another, or who shall violate or attempt to violate any of the provisions of this act, and knowingly permit or encourage another to violate the same, or any public officer or officers or other per-

sons upon whom any duty is imposed by this act or any of its provisions, who shall wilfully neglect such duty, or who shall wilfully perform it in such a way as to hinder the objects and purposes of this act, shall, excepting where some penalty is provided by the terms of this act, be deemed guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one year, nor more than five years, and if he be a public officer, shall also forfeit his office.''

It seems to us the simple reading of the two sections is convincing that section 18 does not in substance change section 17. There is no provision in the Booth act which has such effect. The Booth act, section 25, reads:

''All acts or parts of acts inconsistent with the provisions of this act, as well as all penalties thereunder, are hereby repealed.''

Plaintiff in error was convicted under section 17, act 1894. It is in effect conceded that this conviction should stand unless section 17 was repealed by the Booth act. The Booth act only repeals ''acts and parts of acts inconsistent with'' its provisions, and the penalties under such inconsistent provisions. Section 17 is not inconsistent with section 18, or any other part of the Booth act, it has in effect, and almost literally, been re-enacted in section 18 of that act. Pertinent is the following from *Holden v. Minn.,* 137 U. S. 483, 490, 491:

''These provisions were not repealed by the act of April 24, 1889. In respect to the first and second sections of that act, it is clear that they contain nothing of substance that was not in sections eleven and twelve of chapter 118 of the general statutes of 1878. And it is equally clear that the provisions of an existing statute cannot be regarded as inconsistent with a subsequent act merely because the latter re-enacts

or repeats those provisions. As the act of 1889 repealed only such previous acts and parts of acts as were inconsistent with its provisions, it is inaccurate to say that that statute contained no saving clause whatever. By necessary implication previous statutes that were consistent with its provisions were unaffected.''

In *Lewis v. Stout,* 22 Wis. 225, 227, the court in an opinion by Dixon, chief justice, said:

''It is a general rule in the construction of statutes, that a statute that revises the subject-matter of a former statute, works a repeal of such former statute without express words to that effect. The act of March 31, 1860, to provide for letting the public printing by contract, seems to be a substitute for the previous act on the same subject; and this rule would no doubt govern in its construction but for the language of the fifteenth section. That section provides that 'All acts and parts of acts, inconsistent with the provisions of this act, are hereby repealed.' This language seems to indicate very clearly that if there were any parts of the former act not 'inconsistent,' the same were not to be repealed.''

See, also, *People v. Durick,* 20 Cal. 94, 96.

To sum up, it seems to us the law under which this plaintiff in error was convicted is not inconsistent with, therefore, not repealed by, the Booth act of 1905. If this be true, his conviction should stand. This conclusion we believe to be supported by principle and authority, and further, it avoids implying to a co-ordinate branch of the government—the legislative—either negligence or corrupt motives in the passage of the Booth act.

We think the judgment of the lower court should be affirmed.

Mr. Justice Steele concurring.