**In the Matter of Disciplinary Proceedings Regarding the License to Practice Dentistry of Robert Edwin MAUL, D.D.S., Petitioner,**

v.

**The STATE BOARD OF DENTAL EXAMINERS of the State of Colorado, Respondent.**

**No. 80CA0433.**

Colorado Court of Appeals, Div. II.

July 1, 1982.

Rehearing Denied July 29, 1982.

Certiorari Granted Dec. 6, 1982.

Cogswell & Wehrle, Durant D. Davidson, Denver, for petitioner.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., William A. Richardson, Asst. Atty. Gen., Denver, for respondent.

KELLY, Judge.

Robert Edwin Maul petitions under § 13–4–102(2), C.R.S.1973 (1981 Cum.Supp.) for

review of an order of the State Board of Dental Examiners (the Board) which found that he had violated § 12–35–118(1)(e), (1)(*l*), (1)(n), and (2)(s), C.R.S.1973 (1978 Repl.Vol. 5). The charges against Maul were based on his treatment of a patient and the quality of his work on a set of dentures for that patient. The Board issued a letter of reprimand and placed Maul on probation for one year, ordering him to take remedial courses of instruction.

Maul claims that his right to procedural due process was violated by § 12–35–107(1)(c) and (d), C.R.S.1973, which allows the Board to investigate, bring charges, and decide the merits of those charges. Maul also argues a due process deprivation arising from the presence of the hearing officer during the Board's deliberations. Maul finally contends that there was insufficient evidence to support the findings of the Board. We affirm the order.

Maul's first argument is that his right to procedural due process was violated because the Board acted in a dual capacity by both investigating and adjudicating the charges filed against him. The Dental Practice Law of Colorado, § 12–35–107(1)(c) and (d), C.R.S.1973, specifically authorizes the Board to conduct investigations and hearings and to issue sanctions if it finds a violation of the law. In *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Supreme Court held that the combination of investigatory and adjudicatory functions is permissible unless the risk of unfairness is intolerably high, and only in such circumstances is there a due process violation. Relying on this principle, Maul claims that the facts and circumstances of this case presented a risk of unfairness that was intolerably high. However, he did not allege any circumstances which would set his case apart from the routine functioning of the Board, and no special risk is apparent from the record. Thus, his contention is without merit.

■ Maul also contends that his right to procedural due process was violated by allowing the hearing officer to be present during the Board's deliberations. We disagree.

■ The actions of the Board are presumed to be valid unless there is clear evidence to the contrary. *Public Utilities Commission v. District Court,* 163 Colo. 462, 431 P.2d 773 (1967). In *Weissman v. Board of Education,* 190 Colo. 414, 547 P.2d 1267 (1976), where counsel for the Board of Education retired with it during its deliberations, the court held that, "in light of all the evidence, the fact that he cast no vote, and the apparent absence of any substantial prejudice to [the teacher]," there was no reversible error.

Here, the hearing officer was present during the Board's deliberations in an advisory capacity and did not vote. Maul does not make any specific allegations of prejudice, and we find no evidence of impropriety. Therefore, the presence of the hearing officer did not constitute a denial of procedural due process.

■ Maul finally alleges that the findings of the Board are unsupported by the evidence and are arbitrary and capricious. Underlying this argument is the assumption that the Board could not properly decide the case without viewing Barrett's dentures. Considering the record as a whole, as we must, *Noe v. Dolan,* 197 Colo. 32, 589 P.2d 483 (1979), we conclude that it reveals sufficient evidence to sustain the Board's findings and conclusions, and the admission of the dentures as an exhibit was not essential to the result reached.

The order is affirmed.

VAN CISE, J., concurs.

BERMAN, J., dissents.

BERMAN, Judge, dissenting.

I respectfully dissent.

The Board here violated both the specific statutory procedure set out in the "Dental

Practice Law of Colorado," § 12–35–101 et seq., C.R.S.1973, and the due process rights of the petitioner when the hearing officer conducted the hearing jointly with the Board and then attended the Board's deliberations as "legal advisor."

The dental board has the power to appoint a hearing officer "on a full-time or part-time basis to conduct any hearings required by this article." Section 12–35–107(1)(g), C.R.S.1973. The hearing officer is "to take evidence and to make findings and report them to the board." Section 12–35–108, C.R.S.1973. The hearing officer is appointed under the authority of § 24–30–1003, C.R.S.1973 (1981 Cum.Supp.) of the Colorado Administrative Procedure Act and, as specifically recognized by the hearing officer here,[1] the proceeding is governed by § 24–4–105, C.R.S.1973 of that Act.

In its decision and order the Board stated: "Don P. Stimmel, Hearing Officer assigned to the case from the Department of Administration, presided over all pretrial proceedings and over the hearing as the Board's legal advisor, ruled upon admissibility of evidence, and was present as an advisor during the deliberations following the hearing." However, the record discloses that in the pretrial proceedings when the petitioner presented a motion to disqualify the board of dental examiners, it was the Board who ruled upon the motion and denied it. Furthermore, in conducting the hearing, it was the Board, after a conference with the hearing officer, who ruled on such matters as to whether evidence, *i.e.*, the dentures in question, should be suppressed.

The Colorado APA provides that "[a]t a hearing *only one* of the following may preside: The agency or if otherwise authorized by law, a hearing officer who if authorized by law may be a member of the body which comprises the agency." Section 24–4–105(3), C.R.S.1973. (emphasis added).

Thus, the statute presents three options for the conducting of a hearing. First, the agency itself may preside. Second, the agency may appoint a hearing officer, and third, if authorized by law, the agency may choose a member of its own body to preside at the proceeding as a hearing officer. Here, pursuant to its enabling statute, the Board chose the second option.

If the Board had selected the first option, then § 24–4–105(4), C.R.S.1973, provides that "[i]n the event more than one person engages in the conduct of a hearing, such persons shall designate one of their number to perform such of the above functions as can best be performed by one person only . . . ." This is the only instance in which this portion of the statute is triggered since the statute has already specified that only one, either a hearing officer *or* the agency can conduct the hearing.

The Board stated that the hearing officer attended its deliberations as "legal advisor." This function of the hearing officer extends beyond the powers of the hearing officer as defined by the statute. Rather, this function is to be performed by the attorney general who is directed to "counsel with and advise the board in connection with its duties and responsibilities under this article." Section 12–35–133, C.R.S.1973.

Furthermore, the statute provides that "the board may employ private legal counsel, subject to appropriations, on a part-time basis to assist the board in carrying out its powers and duties . . . ." Section 12–35–107(2), C.R.S.1973 (1981 Cum.Supp.). This section also states that licensing fees shall be in a sufficient amount to pay for such counsel. The statute does not indicate that the hearing officer is to be used in such a capacity. "[A]s in the case with any administrative agency, the board must strictly comply with its enabling statute." *Sherrerd v. Johnson,* 32 Colo.App. 367, 511 P.2d 923 (1973); *Public Utilities v. Colorado Motorway,* 165 Colo. 1, 437 P.2d 44 (1968).

---

1. At the beginning of the proceeding, the hearing officer stated: "This hearing has been called pursuant to the Administrative Procedure Act and will be conducted according to the provisions of that act." The Board expressed no opposition to this statement.

The federal APA and the Colorado APA differ notably in the weight that is to be given the hearing officer's determination. The federal APA states that "[o]n appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision . . . ." 5 U.S.C.A. § 557(b) (1977). Thus, on review, the federal agency can substitute its own judgment on all questions that the hearing officer decided, including questions of fact and credibility of the witnesses. *K. Davis,* 3 *Administrative Law Treatise* § 17:16 (1981).

The Colorado statute, in contrast, provides that "[t]he findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the hearing officer shall not be set aside by the agency on review of the hearing officer's initial decision unless such findings of evidentiary fact are contrary to the weight of the evidence." Section 24–4–105(15)(b), C.R.S.1973 (1981 Cum.Supp.). The agency, under this statute, then has the option of remanding the decision to the hearing officer for further proceedings, to affirm, to set aside, or ·to modify the order in conformity with the findings of fact and law, but it does not have the option of conferring with the hearing officer as was done here.

In light of the procedure set out in the statute, which carefully delineates the duties of the hearing officer and the agency where both are used, the intermingling of the duties of the hearing officer and the agency as was practiced here, thwarts the stated intent of the statute to provide a fair and impartial decision and, thus, violates the test as to whether the petitioner was accorded fundamental fairness in accordance with due process of law. Section 24–4–105(1), C.R.S.1973 (1981 Cum.Supp.). *See also Mountain States Telephone & Telegraph Co. v. Department of Labor,* 184 Colo. 334, 520 P.2d 586 (1974); *Sigma Chi Fraternity v. Regents of University of Colorado,* 258 F.Supp. 515 (D.Colo.1966).

If the General Assembly had intended a procedure in which the hearing officer could confer with the agency, it would have so provided. The federal APA in addressing the issue of separation of functions explicitly states that the employee who presides at the taking of the evidence is not prevented from consulting with a member or members of the agency. 5 U.S.C.A. § 554(d) (1977). *See also K. Davis, 3 Administrative Law Treatise* § 18:5 (1981). The Colorado APA does not contain a parallel section.

The hearing officer is an independent adjudicatory officer and it is his, and only his, responsibility to determine the evidentiary facts. For instance, the role of the federal hearing examiner has been described as being " 'functionally comparable' to that of a judge." *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). I would adopt that description to characterize the hearing officers under the Colorado APA. The procedure the Board practiced here destroys that independence. Even in the absence of any showing that the improper communication biased the Board against the dentist, the appearance of impropriety inherent in such an intermingling of functions mandates that it not be ignored. *See Zuviceh v. Industrial Commission,* 37 Colo. App. 249, 544 P.2d 641 (1975).

In my opinion, the structure of the statutes and the purpose behind them, mandate that the rule of *Weissmann v. Board of Education,* 190 Colo. 414, 547 P.2d 1267 (1976) should apply to hearing officers. In *Weissmann,* the Supreme Court set up a prospective rule only, which it did not apply in the case before it, because of the various factors set out in the majority opinion, and because of the overwhelming evidence against the teacher in that case. However, in listing these factors it was not establishing exceptions to the rule, thereby condoning violations of due process. As the Court clearly stated in *Weissmann,* the purpose behind the rule was not only to prevent any impropriety or unfairness, but "to avoid *any appearance* of impropriety or unfairness." *Weissmann, supra* (emphasis added).

I would reverse and order the charges dismissed.